# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| SANDRA W.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv00683 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Sandra W. ("Sandra") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Sandra alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine her RFC, including by improperly evaluating the opinions of the state agency doctors; (2) assess her allegations regarding her symptoms; and (3) assess her mental impairments.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 14), and **DENYING** Sandra's Motion for Summary Judgment (Dkt. 11).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Sandra failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## CLAIM HISTORY

Sandra filed for DIB in September 2018, claiming that her disability began on May 31, 2018.[4] R. 55, 180. Sandra's date last insured is December 31, 2023; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 12; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Sandra's application at the initial and reconsideration levels of administrative review.[5] R. 54–64, 65–75. On March 13, 2020, ALJ Thomas Erwin held a hearing to consider Sandra's claim for DIB. R. 30–51. Counsel represented Sandra at the hearing, which included testimony from vocational expert Asheley Wells. On March 31, 2020, the ALJ entered his decision analyzing Sandra's claims under the familiar five-step process[6] and denying her claim for benefits. R. 12–24.

The ALJ found that Sandra was insured at the time of the alleged onset and that she suffered from the severe impairments of lumbar radiculopathy, hypertension, obesity, and hypothyroidism.[7] R. 14. The ALJ determined that these impairments, either individually or in

---

[4] Sandra alleged disability due to due to "back problem, depression, nerve, chronic sinus problem with bronchitis, phanstic in feet, high blood pressure, and thyroid." R. 55, 180.

[5] Sandra was 59 years old on her alleged onset date, making her a person of advanced age under the Act; her age category changed to closely approaching retirement age by the date of the ALJ's opinion. R. 22, 54.

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[7] The ALJ also found either non-severe or not medically determinable physical impairments of bronchitis, plantar fasciitis, and metabolic disorder. R. 15.

combination, did not meet or equal a listed impairment. R. 16. The ALJ specifically considered listing 1.04 (disorders of the spine), listing 4.00H1, and related to her thyroid gland disorder pursuant to 9.00A(2), listing 4.00 (hypertension and cardiac dysfunction), listing 5.00 (weight loss), listing 1.00 (strokes), or listing 12.00 (cognitive, mood, and anxiety disorders). As Sandra has a medically determinable impairment of obesity, the ALJ also considered obesity under SSR 19-2. R. 17. The ALJ found that, regarding mental impairments, Sandra's depression and anxiety were non-severe. R. 15. Likewise, the ALJ found Sandra had mild limitations in the broad functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 15–16.

The ALJ concluded that Sandra retained the residual functional capacity ("RFC") to perform a limited range of medium work, including only maximum/occasional lifting of 25 pounds[8], occasionally crawling, and never being exposed to unprotected heights. R. 17. The ALJ determined that Sandra was unable to perform her past relevant work as a color mixer but could perform jobs that exist in the national economy, such as dishwasher, hand packager, and hospital cleaner. R. 23. Thus, the ALJ determined that Sandra was not disabled. R. 23–24. Sandra appealed the ALJ's decision, and the Appeals Council denied her request for review on September 27, 2020. R. 1–4.

## ANALYSIS

Sandra alleges that the ALJ's RFC is not supported by substantial evidence, including because the ALJ failed to properly weigh the opinion evidence and Sandra's allegations. Sandra also alleges that the ALJ erred by finding her mental impairments non-severe.

---

[8] The regulations define medium work as lifting no more than 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

4

### A. Medical History Overview

1. <u>Medical Treatment</u>

Sandra has a history of chronic back pain and saw a doctor associated with a previous workers' compensation claim for monthly pain management visits.[9] On examination, during visits between early 2017 and January 2020, Sandra often had pain and decreased range of motion in her back, but otherwise generally normal findings, including normal gait, muscle strength, muscle tone, sensation, and coordination. <u>See</u> e.g., 365, 433, 435, 439, 442, 475, 488, 491. Her doctor prescribed pain medications as well as a TENS unit. R. 311. Sandra had an MRI in June 2018 and her doctor stated the report from the hospital indicated "scattered degenerative changes within lumbar spine, with no evidence of disc herniation or spinal cord compression."[10] R. 311. In January 2020, Sandra reported increased pain such that "she cannot stand to do dishes or other normal activities." R. 458. On exam, she had positive straight leg raises and limited range of motion in her lumbar spine "secondary to pain." <u>Id</u>. The doctor requested an MRI and a bone scan; however, these are not contained in the record. R. 458, 460.

Beginning in October 2018, Sandra sought treatment for both mental health and various physical complaints with the Mel Leaman Free Clinic, a primary care practice. R. 401. Regarding her mental health, she reported a "longstanding history of mild depression" and was diagnosed in October 2018 with depressive disorder and panic attacks. R. 398, 401–02. On mental status exam she was generally unremarkable. At a follow-up in November 2018, Sandra reported that medication helped with her panic attacks, which now occurred 1–2 times per week

---

[9] Sandra stated at the hearing that she injured her back in December 2007 and was awarded lifetime medical coverage for her injury. R. 33.

[10] The doctor indicated that Sandra had not yet brought in the "actual CD [of the MRI] for review" and that he would need the actual study. R. 311.

and lasted 4–5 minutes. R. 392. In December 2019, Sandra reported continued improvement in her panic attacks, and on mental status examination was tearful but otherwise normal, including calm, alert, intact memory, and intact thought processes and content. R. 388, 389.

    2.  <u>Medical Opinions</u>

In December 2018 and April 2019, respectively, state agency physicians Bert Spetzler, M.D. and Robert McGuffin, M.D. reviewed the record and both found Sandra capable of a limited range of medium work, including lifting and/or carrying a maximum of 25 pounds both frequently and occasionally. R. 60–62, 72–73. On these same dates, state agency psychologists, Sreeja Kadakkal, M.D. and Howard S. Leizer, Ph.D. also reviewed the record and found Sandra had no severe mental impairments. R. 58–59, 70. The ALJ found the opinions of the state agency doctors persuasive. R. 16, 22.

    **B**. **RFC**

Sandra contends that the ALJ's RFC is not supported by substantial evidence. Sandra argues that the ALJ did not properly evaluate the state agency doctors opinions because despite finding them "persuasive," he did not incorporate all of their limitations into the RFC. The RFC includes limitations of only maximum/occasional lifting of a maximum of 25 pounds, never being exposed to unprotected heights, and only occasionally crawling, while the state agency doctors also found postural limitations of frequently climbing ramps and stairs, balancing, stooping, kneeling, and crouching and only occasionally climbing ladders, ropes, and scaffolds, as well as hazard limitations. R. 61, 72–73. Sandra states, without specific support, that "the additional limitations given by these sources would reasonably impact the ability to perform" the jobs identified. Pl.'s Br. at 8, Dkt. 12. The Commissioner counters that the ALJ followed the regulations in considering the state agency doctors' opinions, emphasizing that both

6

these doctors concluded Sandra could perform a reduced range of medium work. The Commissioner also states that none of the jobs identified by the vocational expert require work activities exceeding the limitations found by the state agency doctors.

Sandra submitted her application in September 2018, thus 20 C.F.R. §§ 404.1520c governs how the ALJ considered the medical opinions here.[11] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide, however, that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. Id. "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements. Id.[12]

---

[11] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

[12] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well–supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors

Here, the ALJ appropriately considered the state agency doctors opinions under the new Regulations. The ALJ found the state agency doctors' opinions persuasive, writing that these doctors gave Sandra "lifting/carrying limitations of 25 pounds frequently" to accommodate her spinal issues and hypertension. R. 22. The ALJ concluded that the state agency's doctors weight limitation was "consistent with the evidence regarding [Sandra's] back findi[ngs] and level of activity." Id. This is supported by the medical records showing that while Sandra did have back pain and decreased range of motion at her provider appointments, she otherwise had generally normal findings, including normal gait, muscle strength, muscle tone, sensation, and coordination. The ALJ also explained that the record did not show that Sandra's hypertension would be highly limiting, including because she did not report chest pain or dyspnea from the hypertension. Id.

The ALJ did not err by not adopting the state agency doctor's opinions on Sandra's additional limitations, including that she can frequently climb ramps and stairs, balance, stoop, kneel, and crouch and only occasionally climb ladders, ropes, and scaffolds. The ALJ acknowledged the state agency doctors' opinions, applied the appropriate Regulations, and considered the persuasiveness of their opinions; however, the ALJ was not required to defer to the state agency doctors' opinions, or explain how he considered each of their medical opinions individually.[13] Instead, the RFC assessment lies squarely with the ALJ, not with any medical

---

including: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

[13] As the Regulations explain, because of the:

> voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using

provider or examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). Here, the ALJ adequately explained how he found the opinions persuasive, or not persuasive, and appropriately incorporated the opinions to the extent they were supportive and consistent with the overall record. To this end, when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the Court defers to the ALJ's decision. Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020).

### C. Subjective Allegations

Sandra argues that the ALJ's assessment of her allegations is not supported by substantial evidence and the ALJ did not properly evaluate her allegations in determining the RFC. Sandra complains that the ALJ's reasons for discounting her allegations, specifically the lack of an MRI, continuing to work after her original injury in 2007, being fired from her last job due to a mistake and not her impairments, and looking for work after leaving her last job, are unsupported in the record. However, I find that the ALJ accurately and appropriately considered these portions of the record in assessing the consistency of Sandra's allegations.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably

---

the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c

produce the alleged symptoms, such as pain.[14] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a discussion of Sandra's medical history and her treatment, as well as her own allegations, and the ALJ adequately explained his finding that Sandra's allegations were not entirely consistent with the medical evidence and other evidence in the record. The ALJ acknowledged Sandra's testimony at the hearing, including her complaints of back and leg pain since her 2007 injury, fatigue, depression, and panic attacks. R. 18, 21. Contrary to Sandra's arguments, the ALJ did not "fail[] to acknowledge the reason [Sandra] was unable to obtain the MRI," but specifically noted that she had discussed an MRI with her doctor in October 2019 because of worsening pain, but it had not yet been approved. R. 20. Subsequently, the ALJ wrote that her doctor requested an MRI and bone scan in January 2020. R. 20–21. The ALJ also accurately noted that, while Sandra had obtained an MRI in June 2018, she failed to provide the MRI to her regular doctor for review. R. 19, 21, 311.

---

[14] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Importantly, the ALJ did not ignore Sandra's testimony that her ability to work from 2007 until 2018 was due to accommodations by her employer, noting that she testified that she could not lift 50 pounds and "was accommodated . . . in that job." R. 21. However, The ALJ also did not err by taking into account that Sandra had been able to work, despite having similar impairments of back and leg pain, between 2007 and 2018 and was not fired due to her impairments. See Barbare v. Saul, 816 F. App'x 828, 834–35 (4th Cir. 2020) (noting that because claimant was diagnosed with tremors well before she stopped working, and there was no significant worsening of the tremors in the record, it was reasonable to discount a doctor's opinion that the tremors would prevent her from working) (citing Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970) (affirming denial of disability claim and noting that the evidence shows claimants eye problem is "long standing and that claimant has worked regularly for many years affected to virtually the same extent as at present")).

Likewise, the ALJ did not err by considering that Sandra "looked for other factory work as well as restaurant work after she lost her job [in 2018]." R. 21. The ALJ reasoned that Sandra's search for other factory and restaurant work after being fired indicated she did not have significant standing and walking limitations, and that she felt she was able to maintain substantial gainful activity. See Frye v. Astue, No. 1:10CV00028, 2011 WL 703729, at *5 (W.D. Va. Feb. 20, 2011) (finding that the fact a claimant "was looking for employment is highly persuasive evidence indicating that he was not disabled during the claim period") (citation omitted); Smith-Brim v. Colvin, No. CV PJM 14-683, 2015 WL 5897748, at *3 (D. Md. Oct. 6, 2015) (noting that "courts have routinely held that a claimant's search for work may be considered as a factor especially bearing on her credibility, when she asserts she is unable to

11

work").

### D. Mental Impairments

Sandra argues that the ALJ failed to properly evaluate her mental impairments by finding them non-severe at step two of the sequential evaluation. In support, Sandra cites to a handful of mental health treatment records she claims support "her depression and panic attacks being severe impairments." Pl.'s Br. at 13, Dkt. 12.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Sandra bears the burden of proving that her depression and panic attacks are severe. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating that the claimant bears the burden of showing that he has a "severe" impairment).

When evaluating mental impairments, the Regulations require the ALJ to use a special technique to rate a claimant's degree of limitation in each of the functional areas based on the extent to which a plaintiff's impairment "interferes with the [] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § § 404.1520a(c)(2), 416.920a(c)(2). The four functional areas include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

12.00(A)(2)(b), § 12.04(B). A rating of "none" or "mild" generally calls for a conclusion that the impairments are not severe unless the evidence indicates more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § § 404.1520a(d)(1), 416.920a(d)(l). If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, a finding of not disabled is made at step two, and the sequential process comes to an end. On the other hand, if the claimant has at least one impairment that is deemed severe, the process moves on to the third step.

Here, the ALJ found that Sandra's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." R. 15. The ALJ found a mild limitation in all four functional areas. In understanding, remembering or applying information, the ALJ noted that the record did not indicate cognitive issues, and though Sandra had depression and anxiety, she also had normal thoughts and intact memory. Id. In interacting with others, the ALJ noted that Sandra reported stress and irritability during visits with a provider, but that the record did not show any abnormal "anger or belligerence" or paranoia, or any issues with social interaction at work or with her medical providers. R. 15. In concentrating, persisting, or maintaining pace, the ALJ acknowledged worsening depression and anxiety during the period at issue, but noted Sandra's depression did not prevent her from attending to her activities of daily living, including caring for her mother, and her panic attacks improved over time. R. 15–16. Regarding adapting or managing oneself, the ALJ found Sandra had no hallucinations, delusions, or thought abnormalities. R. 16. The ALJ reasoned that Sandra felt increased stress from caring for her mother because it was an "understandably difficult activity," but noted she took medication for her panic attacks and they

13

resolved. Id. The ALJ also wrote that Sandra was able to continue attending to her activities of daily living despite suffering from depression and did not have any suicidal ideation. Id. Overall, because Sandra's medical determinable mental impairments caused no more than mild limitation in any of the functional areas and the evidence does not otherwise indicate a more than minimal limitation in Sandra's ability to do basic work activities, the ALJ found her mental impairments non-severe. R. 14, 16.

The ALJ's assessment of non-severe mental impairments is consistent with the findings of the state agency doctors, whom he found persuasive. R. 16, 58–59, 70. The state agency doctors also found mild limitations in all the functional areas and noted that Sandra did not have significant mental health symptoms or limitations, including no specific inpatient or outpatient treatment, and that her mental status exams were generally normal. Id.

Sandra argues that her allegations and the treatment records from the Mel Leaman Free Clinic beginning in October 2018 demonstrate that her mental impairments were severe. Sandra cites to records indicating that Sandra was depressed, tearful, and fatigued, was assessed with depressive disorder and panic attacks, and "started on Hydroxyzine as needed for the panic attacks." Pl.'s Br. at 13, Dkt. 12. However, the fact that Sandra was diagnosed with mental conditions and prescribed medications does not establish that she had severe mental impairments. Instead, the ALJ here correctly considered whether the record showed functional limitations, and specifically stated that the RFC "reflects the degree of limitation [he] found in the 'paragraph B' mental function analysis." R. 16. The ALJ's determination that that Sandra's mental impairments do not cause more than a minimal limitation on her ability to work and are non-severe has substantial support in the record, including in Sandra's treatment records showing improving panic attacks, no inpatient hospitalizations, an ability to continue to perform her

activities of daily living, and the state agency doctors' opinions. See Henry v. Berryhill, No. 2:16-CV-3884-PMD-MGB, 2018 WL 1319015, at *7 (D.S.C. Jan. 19, 2018), report and recommendation adopted, No. 2:16-CV-3884-PMD-MGB, 2018 WL 1305716 (D.S.C. Mar. 13, 2018) (finding that depression that is responsive to treatment and causes no more than minimal vocationally relevant limitations is not a severe impairment) (collecting cases); see also 20 C.F.R. § § 404.1520a(d)(1) (stating that a rating of "none" or "mild" generally calls for a conclusion that the impairments are not severe unless the evidence indicates more than a minimal limitation in the claimant's ability to do basic work activities).

Sandra does not identify any evidence ignored by the ALJ concerning her mental impairments; the ALJ here applied the correct law and sufficiently explained his decision. At bottom, Sandra is asking the court to reweigh the medical evidence and come to a different conclusion, which is not the court's proper role. Hays, 907 F.2d at 1456. Accordingly, I find substantial evidence supports the ALJ's determination that Sandra's mental impairments were non-severe and that Sandra is capable of performing work at the level stated in the ALJ's opinion.

## **CONCLUSION**

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication

of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

                                  Entered: February 4, 2022

                                  *Robert S. Ballou*

                                  Robert S. Ballou
                                  United States Magistrate Judge