CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 23 2022

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SANDRA W., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:20-CV-683 |
| | ) |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner | ) |
| of Social Security, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on February 4, 2022, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Sandra W. (Sandra) has filed objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Sandra filed an application for disability insurance benefits on September 11, 2018, alleging disability beginning on May 31, 2018. Sandra was 59 years old at the alleged onset date and her "date last insured" is December 31, 2023. She seeks disability based on back problems, depression, anxiety, chronic sinus problem with bronchitis, plantar fasciitis, high blood pressure and thyroid issues. R. 180.

The ALJ found that Sandra had severe impairments of lumbar radiculopathy, hypertension, obesity, and hypothyroidism, but that none of her impairments met or medically equaled a listed impairment. The ALJ further found that Sandra's chronic sinus problem with bronchitis, plantar fasciitis, metabolic disorder, and depression and anxiety were non-severe impairments. The ALJ found that Sandra had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. 404.1567(c) except her maximum/occasional lift was 25 pounds with additional limitations of not being exposed to unprotected heights and only occasional crawling. Based on this RFC and the testimony of a vocational expert, the ALJ determined that Sandra could not return to her past relevant work as a color mixer in a plastics factory. However, the ALJ found that Sandra could do the jobs of dishwasher, hand packager, and hospital cleaner, and that such jobs existed in significant numbers in the national economy. Therefore, the ALJ concluded that Sandra was not disabled. R. 12-23. The Appeals Council denied Sandra's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Sandra objects to two of the magistrate judge's conclusions. ECF No. 17.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

2

appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. April 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th

Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

4

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

### III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Sandra objects to the findings by the magistrate judge that the ALJ properly considered the opinions of the state agency physicians and that he properly considered Sandra's subjective allegations.

### A. State Agency Physicians[3]

In cases filed after March 27, 2017, the regulations direct that the ALJ is not to give any specific evidentiary weight to any medical opinion or prior administrative medical finding, including from a claimant's medical sources. Rather, all medical opinions and prior administrative medical findings are assessed for their supportability, consistency, relationship with the claimant, specialization, and other factors, such as evidence showing that a medical source has familiarity with the other evidence in the claim or has an understanding of the disability program policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a).

The most important factors in determining whether a medical source opinion is persuasive are its supportability, or the amount of relevant medical evidence and supporting explanations in the record that support the opinion, and its consistency with the evidence from other medical sources and nonmedical sources in the record. 20 C.F.R. § 404.1520c(b)(2). The

---

[2] Detailed facts about Sandra's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 16) and in the administrative transcript (ECF No. 8) and will not be repeated here except as necessary to address her objections.

[3] "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act." Although the ALJ is responsible for assessing a claimant's RFC, he must consider and evaluate any assessment of the claimant's RFC by state agency medical professionals. Titles II and XVI: Consideration of Administrative Findings of Fact, SSR 96-6P (S.S.A. 1996). See also Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (stating that the opinion of a non-examining physician can be relied upon as substantial evidence when it is consistent with the record).

ALJ is not required to articulate in each determination how all the factors of all the medical opinions or prior administrative medical opinions were considered. Rather, when a medical source provides multiple medical opinions or prior administrative medical findings, the ALJ will articulate how he considered the opinions together in a single analysis using the factors described above, as appropriate. The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical finding from one medical source individually. 20 C.F.R. § 404.1520c(b)(1). However, the ALJ should explain how he considered the supportability and consistency factors for medical opinions and prior administrative medical findings in the record. 20 C.F.R. § 404.1520c(b)(2).

In Sandra's case, at the initial disability determination, the state agency physician found that she could occasionally and frequently lift 25 pounds, stand or walk with normal breaks for a total of 6 hours in an 8-hour workday, push and pull up to her lifting and carrying limits, frequently climb ramps or stairs, and occasionally climb ladders, ropes, and scaffolds, frequently balance, stoop, kneel, or crouch, and occasionally crawl. She had no manipulative or environmental limitations but should avoid working around heights or hazardous machinery. This assessment gave her an RFC of medium work with the additional limitations. R. 61-63. On reconsideration, the state agency physician assessed Sandra with the same limitations, except for the finding that she should not work around heights or hazardous machinery. R. 72-73.

In his determination, the ALJ said of the state agency opinions:

> The State Agency gave the claimant a lifting/carrying limitation of 25 pounds frequently based on her spinal issues and hypertension. [ ] This is consistent with the evidence regarding her back findings and activity level. In regard to her hypertension, her primary care provider assessed her with elevated hypertension

7

> without a diagnosis of hypertension in October 2018, and the claimant thought her blood pressure had been elevated due to stress, though she was on medication. She did not report chest pain or dyspnea from her hypertension, and the record does not indicate this condition would be highly limiting. The lifting/carrying limitation of 25 pounds accommodates this condition. The State Agency opinions are persuasive.

R. 21-22. In the RFC determination, the ALJ adopted the findings of the state agency physicians, except for their findings that Sandra could push and pull up to her lifting and carrying limits, frequently climb ramps or stairs and occasionally climb ladders, ropes, and scaffolds, frequently balance, stoop, kneel, or crouch, and should avoid working around hazardous machinery. R. 17.

Sandra argued to the magistrate judge that the ALJ erred by including only the 25-pound weight limit in the RFC and not the other postural limitations cited by the agency physicians, despite finding their opinions persuasive overall. She asserted that including the non-exertional limitations would reasonably impact her ability to perform the jobs identified at Step 5 of the sequential evaluation.[4] She further pointed out that the burden of proof shifts

---

[4] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

8

to the Commissioner at Step 5 and asserts that the Commissioner did not meet his burden because he did not include the non-exertional limitations.

The magistrate judge found that the ALJ did not err because he was not required to defer to the state agency doctors' opinions or explain how he considered each of their medical opinions individually. The magistrate judge noted that the RFC assessment is for the ALJ to determine and that in this case, the ALJ adequately explained why he found the opinions persuasive and incorporated them to the extent he found them consistent with the overall record.

Sandra objects to this finding, arguing that the ALJ failed to explain why he excluded some of the non-exertional limitations from the RFC after finding the state agency opinions to be persuasive overall. She argues that the ALJ erred when he did not explain why he did not include the additional postural limitations or exposure to working around dangerous machinery and that the Commissioner did not meet his burden of proof of showing jobs exist for her in the national economy.

However, the issue here is whether the RFC finding is supported by substantial evidence. If the RFC finding, absent the non-exertional limitations, is supported by substantial evidence, the ALJ correctly relied upon it to pose the hypothetical question to the vocational expert. In turn, the ALJ correctly relied upon the vocational expert testimony to find that jobs exist for Sandra, thus meeting the Commissioner's burden at Step 5 of the evaluation.

Sandra is correct that the ALJ did not mention all of the non-exertional limitations in his discussion of the state agency opinions. Nevertheless, while an ALJ is required to consider the entire record, he is not required to articulate how he considered each medical opinion or

9

prior administrative medical finding from one medical source individually. 20 C.F.R. § 404.1520c(b)(1). See also Matthew P. v. Saul, No. 1:19-CV-01191-TSE-MSN, 2020 WL 7391297 (E.D. Va. Nov. 23, 2020) (citing Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) ("While the ALJ gave the state experts great weight, the ALJ is not required to address every comment made by the experts."); Mac K. v. Comm'r of Soc. Sec., No. 4:18-cv-00043, 2020 WL 674453, at *3 (W.D. Va. Feb. 11, 2020) (noting that an ALJ is not required to accept all findings of a state agency physician even when he accepts most of the physician's opinion); Smith v. Comm'r, No. 4:09cv80, 2010 WL 1640271, at *3 (E.D. Va. April 22, 2010) ("While an ALJ is required to consider all of the relevant evidence in the record, there is no requirement that the ALJ expressly discuss each piece of that evidence.")

In this case, the ALJ found the opinions of the state agency physicians persuasive as to Sandra's ability to do medium work, but nevertheless implicitly rejected some of the non-exertional limitations they imposed. See Bacnik v. Colvin, No. 1:12-CV-801, 2014 WL 3547387, at *4 (M.D.N.C. July 17, 2004) (finding where ALJ adopted conclusions of agency physicians as to claimant's mental RFC but failed to incorporate the suggested limitations, he implicitly rejected the limitations). But even without an explanation from the ALJ as to why he rejected the non-exertional limitations, the court finds that the RFC is supported by substantial evidence based upon the other evidence cited by the ALJ.

In support of his RFC finding, the ALJ noted that although Sandra complained of worsening back and leg pain, on examination she had a normal gait and normal strength in all muscle groups with normal tone. R. 19. An MRI showed scattered degenerative changes in her lumbar spine with no evidence of disc herniation or spinal cord compression. She

10

remained neurologically intact with normal muscular and neurological findings. Id. The ALJ acknowledged that Sandra had positive straight leg raises late in the record and complained of not being able to perform her normal activities. R. 21. But he also noted that although she had complained of back issues since injuring her back in 2007, she did not stop working because of back issues, but rather because she was terminated for making a mistake. In October 2018, Sandra had reduced her pain medication but reported an increase in her activity level. She testified that she was taking care of her elderly mother, although she did not help her with physical activities. Id. The ALJ also noted that Sandra looked for work after she was terminated, including factory work and restaurant work, indicating that she did not have significant walking or standing limitations and that she felt capable of sustaining employment. Id.

While an explanation from the ALJ as to why he did not incorporate all of the limitations proposed by the state agency physicians would have made the ALJ opinion more clear, this is not a case where the court is left to wonder how the ALJ reached his assessment of a claimant's RFC. Rather, the basis of the RFC is apparent from the other evidence the ALJ cited. See Felton-Miller v. Astrue, 459 F. App'x 226, 230-31 (4th Cir. 2011) (noting that the RFC finding by an ALJ is an administrative assessment based on all the relevant evidence in the case record and an ALJ may properly base the RFC finding on the claimant's subjective complaints, the objective medical evidence, and the opinions of treating, examining, and non-examining physicians).

Moreover, Sandra has failed to show how a remand to have the ALJ explain his reasons for not including all the non-exertional limitations in his RFC might lead to a different result.

11

See Garner v. Astrue, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (citing Shinseki v. Sanders, 556 U.S. 396 (2009) (noting that party attacking agency determination bears the burden of showing that an error was harmful); Smith v. Colvin, No. 1:12-cv-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (finding error by ALJ harmless where remand would not lead to a different result). Sandra argues that proper evaluation of the state agency physicians' opinions is pivotal to her case, but she does not explain how the outcome might have been different had the ALJ explained why he did not adopt all the limitations they suggested. As the magistrate judge noted, the commissioner argued that none of the jobs identified by the vocational expert require work activities exceeding the limitations found by the state agency doctors. Under such circumstances, Sandra cannot show that the ALJ's failure to discuss the non-exertional limitations was harmful error. Therefore, her objection to this finding by the magistrate judge is **OVERRULED**.

### B. Subjective Allegations

Sandra also objects that the ALJ erred in his assessment of her subjective allegations. Sandra testified at the ALJ hearing that she looked for work at factories, stores, and restaurants after she was terminated from her last job and the ALJ cited her testimony as support for finding that she did not have significant standing or walking limitations and that she felt capable of maintaining substantial gainful activity. Sandra argued to the magistrate judge that even if her limitations allowed her to work at the light or sedentary level, based on her age and education, the Medical/Vocational Guidelines would direct a finding of "disabled" if she were

limited to light or sedentary work.[5] Thus, she argued, the ALJ should not have relied on her attempts to look for work as evidence that her impairments were not as disabling as she alleged.

The magistrate judge found that the ALJ reasonably concluded that Sandra's search for factory and restaurant work indicated that she did not have significant standing and walking limitations, citing in support Frye v. Astrue, No. 1:10CV00028, 2011 WL 703729, at *5 (W.D. Va. Feb. 20, 2011) (stating that the fact that the claimant was looking for employment was "highly persuasive evidence indicating that he was not disabled during the claim period"), and Smith-Brim v. Colvin, No. CV PJM 14-683, 2015 WL 5897748, at *3 (D. Md. Oct. 6, 2015) ("[C]ourts have routinely held that a claimant's search for work may be considered as a factor especially bearing on her credibility, when she asserts she is unable to work."). See also House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (actively searching for work during the claim period may support discounting an individual's claims of disability).

Sandra argues that her case is distinguishable because even if she were capable of doing a full range of light or sedentary work, Rule 202.06 would still direct a finding of "disabled"

---

[5] When a claimant such as Sandra has a severe medically determinable impairment, is not engaging in significant gainful activity, and cannot her to return to her past relevant work because of her impairment, the Commissioner first turns to the Medical Vocational Guidelines, or "Grids," located at Appendix 2 to Subpart P of Part 404 of the Social Security regulations for a determination of disability. The Grids reflect the analysis of vocational factors such as age, education, and work experience, combined with the claimant's RFC, to determine whether she can engage in work other than her past relevant work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. If a person of Sandra's age, education, and work experience were limited to light or sedentary work, she would be found disabled under the Grids. However, if the same person could do medium work, she would not be disabled under the Grids. When a claimant has non-exertional as well as exertional impairments, the adjudicator does not rely on the Grids but uses them as a guideline and typically solicits testimony from a vocational expert to assist in making the disability determination. Campbell v. Apfel, 168 F.3d 481, at *2 (4th Cir. 1998) (per curiam).

based on her age and education. Therefore, she argues, the fact that she was looking for work is not necessarily inconsistent with or persuasive evidence against a finding that she is disabled.

Sandra is correct that if she were limited to light or sedentary work, the Grids would direct a finding that she is disabled. However, that fact does not bear on whether the ALJ erred when he considered her search for employment as a factor when determining whether her allegations about the intensity, persistence, and limiting effects of her symptoms were consistent with the other evidence in the record. Sandra testified at the hearing that she could not do a "sit-down" job because when she sits her back starts to hurt and her leg goes numb. R. 37, 43. She has pain, numbness, and tingling in her low back, legs, and feet and lays down for three to four hours per day. R. 38-40. She testified she could stand for 40-45 minutes at a time and walk for approximately one quarter of a mile. R. 44. If Sandra's testimony were taken at face value, she would be unable to maintain employment. However, it is the job of the ALJ to weigh the conflicting evidence in the record and that is what he did in this case when he weighed Sandra's testimony about applying for jobs against her testimony of disabling symptoms. As the magistrate judge noted, "when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the court defers to the ALJ decision." R&R, ECF No. 16 at 9 (citing Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020)).

The court agrees with the magistrate judge that the ALJ did not err when he considered Sandra's testimony about her job search. The fact that Sandra would be disabled under the Grids does not affect the ALJ's duty to weigh conflicting evidence in the record. Accordingly, Sandra's objection to this finding by the magistrate judge is **OVERRULED**.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. Therefore, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 02-23-2022

Michael F. Urbanski
Chief United States District Judge